```
         IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF MARYLAND

                                  :
LATOSHA N. CANNON
                                  :

     v.                           :   Civil Action No. DKC 20-3196

                                  :
EASTERN CORRECTIONAL INSTITUTION
                                  :
```

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this Title VII and ADA employment discrimination case are the motion to dismiss filed by Defendant Eastern Correctional Institution ("ECI") (ECF No. 25), and the motion for leave to file supplemental complaint filed by Plaintiff Latosha N. Cannon (ECF No. 30). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion to dismiss will be granted and the motion for leave to file will be denied.

**I.    Background**

Unless otherwise noted, the facts outlined here are set forth in the complaint, the documents and factual narrative attached to the complaint, or evidenced by the Charge of Discrimination Ms. Cannon filed with the Maryland Commission on Civil Rights and attached as an exhibit to Ms. Cannon's complaint and ECI's motion

to dismiss.  The facts are construed in the light most favorable to Ms. Cannon.

Ms. Cannon began working as a correctional officer at ECI on February 1, 2013.  (ECF No. 1, at 5).  In 2014, she miscarried, which she attributes to job stress.  (ECF No. 1, at 5).  Three months later, she became pregnant again.  She requested an accommodation for light duty, but supervisors told her no.  (ECF No. 1, at 5).  In fact, supervisors told her that she was a rookie and deserved to walk and work while pregnant.  (ECF No. 1-1, at 26).  On March 14, 2015, while pregnant and working at ECI, she twisted her left ankle.  (ECF No. 1, at 5, 8).  This ankle injury became a recurring injury.  (ECF No. 1, at 9).  She later slipped down several stairs and injured her right knee on September 21, 2016.  (ECF No. 1, at 13).  She was injured again on January 4, 2018, when, while working at ECI, she slipped on an icy walkway and fell.  (ECF Nos. 1, at 6).  She complained to supervisors, about the pain she was in, but they did not change her work assignments.  (ECF No. 1, at 7).  Ms. Cannon had surgery on the ankle in 2019.  (ECF No. 1-1, at 5).  In June of 2020, Ms. Cannon's doctor concluded that she would "not be able to return to work in Corrections ever."  (ECF No. 1-2, at 12).[1]

---

[1] It appears that Ms. Cannon has not worked at least since January 20, 2018.  (ECF No. 30-4, at 35).

Independent of the alleged failure to accommodate Ms. Cannon's ankle and knee injuries, ECI employees harassed Ms. Cannon and treated her with hostility. In November of 2015, Ms. Cannon reported the presence of K-2 smoke in ECI to superiors. (ECF No. 1, at 10-11). The K-2 smoke made her dizzy and disoriented, and contributed to the accidents which caused her left ankle and right knee injuries. (ECF No. 1-1, at 20-21). Despite her complaint, a superior officer continued to require her to work in the area where the K-2 smoke was because the superior did not like her. (ECF No. 1, at 11). Moreover, after her complaint and a meeting with supervisors, the hostility toward her worsened as she was assigned to posts in the cold and rain. (ECF No. 1, at 11). Then, in 2018, another officer sexually harassed Ms. Cannon. The officer repeatedly rubbed her arms and made verbal advances. (ECF No. 1-1, at 23). Lastly, Ms. Cannon states that people at ECI didn't like the color of her skin. (ECF No. 1, at 7).

On January 20, 2018, Ms. Cannon was placed on workers' compensation. (ECF No. 1-1, at 1). She does not appear to have returned to work at ECI after that date.

On July 7, 2020, Ms. Cannon filed a Charge of Discrimination with the Maryland Commission on Civil Rights.[2] The Charge alleged

---

[2] Ms. Cannon attached an unsigned and undated copy of the Charge to her complaint. (ECF No. 1-1, at 1-2). ECI provided the copy of the Charge signed by Ms. Cannon and dated July 7, 2020. (ECF No. 25-2). The signed and dated copy may be considered

3

race, sex, and disability discrimination, as well as retaliation, occurring between November 10, 2014, and January 20, 2018. (ECF No. 1-1, at 1). Ms. Cannon states that she received a right to sue letter from the Equal Employment Opportunity Commission on the same day. (ECF Nos. 1, at 14). She did not attach the letter to her complaint. Three months later, Ms. Cannon filed her *pro se* complaint on October 5, 2020.

Ms. Cannon's complaint alleges claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000(e). She alleges that she was discriminated against in 2015, 2016, 2017, and 2018. (ECF No. 1, at 4). ECI filed a motion to dismiss. (ECF No. 25). Ms. Cannon subsequently filed correspondence indicating that she wanted to amend her complaint to add a claim. (ECF No. 28). Ms. Cannon was given an opportunity to file a motion for leave to amend her complaint. (ECF No. 29). Instead, she filed what was construed as a motion for leave to file a supplemental complaint. (ECF No. 30). She included as an attachment to her motion for leave to file a second Charge of Discrimination. The second Charge alleges that ECI further violated the ADA when, in March 2021, it informed Ms. Cannon that

---

because the Charge "is integral to and explicitly relied on in the complaint," and Ms. Cannon has not challenged its authenticity. *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (citations omitted).

it was unable to accommodate her disability.  (ECF No. 30-4, at 33).  The Government opposed the motion.[3]  (ECF No. 31).

**II.  Standards of Review**

ECI's assertion that sovereign immunity bars Ms. Cannon's ADA claim is properly assessed under Federal Rule of Civil Procedure 12(b)(1).  *Hammons v. Univ. of Md. Med. Sys. Corp.*, 551 F.Supp.3d 567, 578-79, 578 n.6 (D.Md. 2021).  ECI's assertions that Ms. Cannon's Title VII claim is time barred, or in the alternative does not state a claim, are properly assessed under Federal Rule of Civil Procedure 12(b)(6).  *Sewell v. Strayer Univ.*, 956 F.Supp.2d. 658, 667 (D.Md. 2013).

A motion to dismiss under Rule 12(b)(1) should be granted "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).  In the context of such a motion, courts should "regard the pleadings as mere evidence on the issue," and "may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).  As a general

---

[3] ECI's opposition argues that amendment is futile and that amendment under Federal Rule of Civil Procedure 15(a) should not be allowed.  A paperless order was entered explaining that Ms. Cannon's motion for leave to file *supplemental* complaint was filed under 15(d).  ECI did not file anything further.

rule, the plaintiff bears the burden of proving that subject matter jurisdiction exists. *Richmond* 945 F.2d at 768-69.

The defense of sovereign immunity is a jurisdictional bar. *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 649 (4th Cir. 2018) (citation omitted) (discussing sovereign immunity in the context of government contractors), *cert. denied*, 139 S.Ct. 417 (2018); *see also Cunningham v. Lester*, 990 F.3d 361,365 (4th Cir. 2021) (recognizing sovereign immunity as a jurisdictional limitation and describing it as "a weighty principle, foundational to our constitutional system"). In this context, however, "the burden of proof falls to an entity seeking immunity as an arm of the state, even though a plaintiff generally bears the burden to prove subject matter jurisdiction." *Williams v. Big Picture Loans, LLC*, 929 F.3d 170, 176 (4th Cir. 2019) (citing *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 543 (4th Cir. 2014)).

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) tests the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). "[T]he district court must accept as true all well-pleaded allegations and draw all reasonable factual inferences in plaintiff's favor." *Mays v. Sprinkle*, 992 F.3d 295, 299 (4th Cir. 2021). A plaintiff's complaint need only satisfy the standard of Fed.R.Civ.P. 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief[.]" A Rule 8(a)(2) "showing" still requires

6

more than "a blanket assertion[] of entitlement to relief," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007), or "a formulaic recitation of the elements of a cause of action[.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged." *Mays*, 992 F.3d at 299-300 (quoting *Iqbal*, 556 U.S. at 663).

*Pro se* pleadings are liberally construed and held to a less stringent standard than pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Liberal construction means that the court will read the pleadings to state a valid claim to the extent that it is possible to do so from the facts available; it does not mean that the court should rewrite the complaint to include claims never presented. *Barnett v. Hargett*, 174 F.3d 1128, 1132 (10th Cir. 1999). That is, even when *pro se* litigants are involved, the court cannot ignore a clear failure to allege facts that support a viable claim. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990); *Forquer v. Schlee*, No. 12-cv-969-RDB, 2012 WL 6087491, at *3 (D.Md. Dec. 4, 2012) ("[E]ven a *pro se* complaint must be dismissed if it does not allege a plausible claim for relief.") (citation and internal quotation marks omitted).

7

**III. Analysis**

**A. ADA Claim**

The ADA is divided into several sections called "titles." Each section forbids a type of discrimination. Title I prohibits employment discrimination; Title II prohibits discrimination in providing public services; and Title III prohibits discrimination in providing public accommodations. *Reyazuddin v. Montgomery Cnty.*, 789 F.3d 407, 421-22 (4th Cir. 2015). Ms. Cannon does not say under what section she is suing. Her ADA claim, however, refers to employment issues. Thus, her ADA claim appears to have been brought under Title I. *See Reyazuddin*, 789 F.3d at 421 ("Title II unambiguously does not provide a vehicle for public employment discrimination claims.").

ECI asserts that sovereign immunity blocks Ms. Cannon's ADA claim. Sovereign immunity blocks lawsuits by private citizens against states in federal court. *Bd. of Trs. Of Univ. of Ala. v. Garrett*, 531 U.S. 356, 360 (2001). Sovereign immunity also protects the instrumentalities, or departments, of states. *Bowen v. Maryland, Dept. of Pub. Safety & Corr. Services*, No. 17-cv-1571-RDB, 2018 WL 1784463, at *4 (D.Md. Apr. 12, 2018) (citing *Cash v. Granville Cnty. Bd. of Ed.*, 242 F.3d 219, 222 (4th Cir. 2001)).

A state can waive its sovereign immunity, or Congress can remove it. *Lee-Thomas v. Prince George's Cnty. Pub. Sch.*, 666

F.3d 244, 249 (4th Cir. 2012). Maryland has not waived sovereign immunity for claims brought under Title I of the ADA. *Charles Mattison, Jr., v. Maryland Transit Admin., Maryland Dept. of Transp.*, No. 15-cv-1627-RDB, 2016 WL 2898020, at *5 (D.Md. May 18, 2016). Congress has not removed sovereign immunity for claims brought under Title I of the ADA. *Garrett*, 531 U.S. at 360. Ms. Cannon's lawsuit is against ECI, which is part of the Maryland Department of Public Safety and Correctional Services ("DPSCS"). Maryland still has sovereign immunity, which blocks Ms. Cannon's ADA claim. The motion to dismiss will be granted as to the ADA claim.

As discussed above, Ms. Cannon asked for leave to file a supplemental complaint (ECF No. 30). The proposed supplemental complaint would add to her ADA claim that DPSCS sent her a letter about an alternative job placement to the wrong address.[4] After

---

[4] In an attachment to the motion for leave to file supplemental complaint, Ms. Cannon also stated that an Injured Worker's Insurance Fund employee procrastinated on approving worker's compensation pay, and that her pay was withheld at points in 2019-2021. (ECF No. 30-4, at 3, 34). In her original complaint Ms. Cannon stated that she stopped receiving workers' compensation pay after her doctor reported that she would be unable to return to working as a corrections officer. (ECF No. 1, at 6). It is not clear if these allegations belong to one of Ms. Cannon's claims. It is also not clear whether the allegations are asserted against the only defendant in this case, ECI, or against another unnamed entity.

Ms. Cannon cannot state a Title I or ADA retaliation claim based on these workers' compensation payment allegations. *See Adeyemi v. Dept. of Pub. Safety and Corr. Serv.*, No. 19-cv-3207-

not receiving a response, DPSCS sent another letter stating it was unable to accommodate Ms. Cannon. (ECF No. 30-4, at 35-38). Thus, Ms. Cannon alleges, DPSCS violated the ADA by failing to accommodate her. A court may permit a party to supplement a claim under Federal Rule of Civil Procedure 15(d) even when the original pleading is defective in stating a claim. Ms. Cannon's ADA claim, however, would still be barred by sovereign immunity even with the supplemental facts. The motion for leave to file supplemental complaint will be denied.

### B. Title VII Claim

Title VII requires a plaintiff to file a Charge of Discrimination with the EEOC, or the state equivalent, before filing suit in federal court. 42 U.S.C. § 2000e-5(e)(1), (f)(1). The purpose of this exhaustion requirement is to put employers on notice to potential misconduct and afford them the opportunity to remedy it with the complaining employee more quickly and efficiently than litigation allows. *Chacko v. Patuxent Inst.*, 429 F.3d 505, 510 (4th Cir. 2005). The statute prescribes a limitations period. When, as here, the plaintiff files her Charge with her state's employment discrimination agency, a 300-day limitations period applies. *Gilliam v. South Carolina Dept. of Juvenile Justice*, 474 F.3d 134, 140 (4th Cir. 2007). As applicable in this

---

ELH, 2021 WL 1785141, at *7 (D.Md. May 5, 2021) (finding ADA retaliation claim based on Title I barred by sovereign immunity).

case, that means that the acts of discrimination alleged by a plaintiff must have occurred within the 300 days leading up to the day the Charge was filed.

In this case, Ms. Cannon filed her Charge with the Maryland Civil Rights Commission on July 7, 2020.  300 days before July 7, 2020, was September 11, 2019.  Ms. Cannon's complaint does not allege that ECI committed any acts of discrimination against her between September 11, 2019, and July 7, 2020.  Her Charge states that the discrimination took place between November 10, 2014, and January 20, 2018.  (ECF No. 25-2, at 1).  Her complaint states "It is my best recollection that the alleged discriminatory acts occurred on date(s) 2015, 2016, 2017, 2018."  (ECF No. 1, at 4).  Ms. Cannon's complaint never alleges that discrimination occurred in 2019 or 2020.

A motion to dismiss based on untimeliness will normally not be granted unless the face of the complaint clearly reveals the existence of the untimeliness.  *Sewell*, 956 F.Supp.2d. at 667.  The face of Ms. Cannon's complaint clearly reveals that the alleged discrimination occurred more than 300 days before she filed her the Charge.

The 300-day limitations period can be equitably tolled or estopped.  If tolling or estoppel is applicable, the 300-day limitations period will be modified or not applied. *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002).  Equitable

tolling is appropriate when the defendant misled the plaintiff as to whether there was a factual basis for filing a claim, and the plaintiff reasonably relied on this misrepresentation. *Prelich v. Medical Resources, Inc.*, 813 F.Supp.2d 654, 663 (D.Md. 2011) (citations omitted).  Equitable estoppel is appropriate when the defendant has done something that caused the plaintiff to refrain from exercising her rights.  *Id.*  Ms. Cannon says that when she asked for accommodations a supervisor told her that there was no light duty, no accommodations, and that "this is what [she] signed up for."  (ECF No. 27, at 1).  She was also told to stay working in the same part of ECI in which she had complained about the K2 smoke.  (ECF No. 27, at 2).  She believed her supervisors and as a result did not believe she had a claim.  (ECF No. 27, at 2). She says she did not "put . . . together" that she had claims until after the 2016 arrest and indictment of several ECI correctional officers.  (ECF No. 27, at 3, 6).  That does not explain, however, why she did not or could not file her Charge then, but rather waited until July of 2020.  *Cf. Baker v. Boeing Company*, Civil Action No. 2:18-02574-RMG-MGB, 2021 WL 2819460, at *12 (D.S.C. May 19, 2021) (rejecting equitable tolling argument where plaintiff filed EEOC charge almost a year after "epiphany" that he had a claim).  Equitable tolling and estoppel are inappropriate in this case.  The motion to dismiss will be granted as to Ms. Cannon's Title VII claim.

**IV. Conclusion**

None of the above is intended to make light of Ms. Cannon's allegations. Sovereign immunity bars her ADA claim. For her Title VII claim, Ms. Cannon waited too long to file her Charge. For the foregoing reasons, Defendant ECI's motion to dismiss will be granted.

/s/
DEBORAH K. CHASANOW
United States District Judge
